IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Zita Leeson Weinshienk

Civil Action No. 08-cv-02096-ZLW

JAMES K. CONKLETON,

     Applicant,

v.

KEVIN MILYARD, Warden, Sterling Corr. Facility,
ARISTEDES ZAVARAS, Executive Director, Colo. Dept. Of Corrections, and
JOHN W. SUTHERS, The Attorney General of the State of Colorado,

     Respondents.

---

## ORDER ON PETITION FOR HABEAS CORPUS

---

The matter before the Court is Applicant's Application For A Writ Of Habeas

Corpus Pursuant to 28 U.S.C. § 2254 (Doc. No. 1).  The Court has determined that the

Application can be resolved on the parties' briefing and that no oral argument is

necessary.

## I.    Background

Applicant was charged in El Paso County District Court case number 00CR3621 with five felony counts of sexual assault on a child, based on his prolonged sexual contact with his stepdaughter.  Pursuant to a plea agreement, Applicant entered a guilty plea to count one, which charged that he sexually assaulted his stepdaughter during July 1997, when she was less than fifteen years of age.  The plea bargain stipulated that the sentencing statutes that were in force on November 1, 1998, would apply and, therefore, the trial court amended count one by interlineation to reflect a date of December 1998.  The prosecution agreed to dismiss the remaining counts, to dismiss a misdemeanor violation of a restraining order case, and to forego charging Applicant with additional sexual assault charges against his biological daughter.  On March 19, 2001, the trial court sentenced Applicant to an indeterminate sentence of ten years to life in the Colorado Department of Corrections.

On April 16, 2002, Applicant filed *pro se* a postconviction motion pursuant to Colo. R. Crim. P. 35(c), which the trial court denied, and Applicant appealed.  On June 10, 2004, the Colorado Court of Appeals remanded because the trial court had failed to make adequate findings concerning Applicant's claims.[1]  On remand, the trial court held an evidentiary hearing and denied the motion via written order dated May 17, 2005.  Applicant appealed and the Colorado Court of Appeals affirmed.[2]

---

[1] *See* People v. Conkleton, No. 02CA1222 (Colo. App. June 10, 2004).

[2] *See* People v. Conkleton, No. 05CA1377 (Colo. App. Dec. 6, 2007), *cert. denied* (Colo. Apr. 7, 2008).

## II.     Legal Standard

When reviewing state criminal convictions in federal habeas corpus proceedings,

a federal court does not sit as a super-state appellate court.[3]  "When a federal district

court reviews a state prisoner's habeas petition pursuant to 28 U.S.C. § 2254 . . . . [it]

does not review a judgment, but the lawfulness of the petitioner's custody *simpliciter*."[4]

The exhaustion of state remedies requirement in federal habeas cases dictates that a

state prisoner must "give the state courts one full opportunity to resolve any

constitutional issues by invoking one complete round of the State's established

appellate review process."[5]  With respect to portions of Claim One, Petitioner has

exhausted all remedies available in Colorado courts.[6]

Because Petitioner filed his Petition after April 24, 1996, the effective date of the

Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), that statute governs the

Court's review.[7]  Under the AEDPA, a district court may only consider a habeas petition

when the petitioner argues that he is "in custody in violation of the Constitution or laws

or treaties of the United States."[8]

---

[3]*See* Estelle v. Mcguire, 502 U.S. 62, 67-68 (1991); Lewis v. Jeffers, 497 U.S. 764, 780 (1990).

[4]Coleman v. Thompson, 501 U.S. 722, 730 (1991) (internal quotations and citations omitted).

[5]O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

[6]*See* 28 U.S.C. § 2254(b)(1)(A).

[7]Cannon v. Mullin, 383 F.3d 1152, 1158 (10th Cir. 2004) (citing Rogers v. Gibson, 173 F.3d 1278, 1282 n.1 (10th Cir. 1999)).

[8]28 U.S.C. § 2254(a).

28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.[9]

Claims of legal error and mixed questions of law and fact are reviewed pursuant to 28 U.S.C. § 2254(d)(1).[10]  The threshold question pursuant to § 2254(d)(1) is whether Petitioner seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final.[11]  Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."[12]  Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*.  Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.[13]

---

[9]28 U.S.C. § 2254(d).

[10]*See* Cook v. McKune, 323 F.3d 825, 830 (10th Cir. 2003).

[11]*See* Williams v. Taylor, 529 U.S. 362, 390 (2000).

[12]Id. at 412.

[13]House v. Hatch, 527 F.3d 1010, 1016 (10th Cir. 2008).

If there is no clearly established federal law, that is the end of the Court's inquiry pursuant to § 2254(d)(1).[14] If a clearly established rule of federal law is implicated, the Court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law.[15]

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent."[16] "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'"[17]
>
> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts.[18] Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.[19]

---

[14] *See* id. at 1018.

[15] *See* Williams, 529 U.S. at 404-05.

[16] Maynard v. Boone, 468 F.3d 665, 669 (10th Cir. 2006) (internal quotation marks and brackets omitted) (quoting Williams, 529 U.S. at 405).

[17] Williams, 529 U.S. at 405 (citation omitted).

[18] Id. at 407-08.

[19] House, 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an objective one.[20] "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable."[21] "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law."[22] "[O]nly the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254."[23]

Claims of factual error are reviewed pursuant to 28 U.S.C. § 2254(d)(2).[24] Section 2254(d)(2) allows a court to grant a writ of habeas corpus only if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented. Pursuant to § 2254(e)(1), the Court must presume that the state court's factual determinations are correct and Petitioner bears the burden of rebutting the presumption by clear and convincing evidence. "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'"[25]

---

[20]See Williams, 529 U.S. at 409-10.

[21]Id. at 411.

[22]Maynard, 468 F.3d at 671.

[23]Id.

[24]See Romano v. Gibson, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002).

[25]Miller-El v. Dretke, 545 U.S. 231, 240 (2005) (quoting Miller-El v. Cockrell, 537 U.S. 322, 340 (2003)).

The Court "owes deference to the state court's *result*, even if its reasoning is not expressly stated."[26]  Therefore, the Court "must uphold the state court's summary decision unless [an] independent review of the record and pertinent federal law persuades [the Court] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented."[27]  "[T]his 'independent review' should be distinguished from a full *de novo* review of the petitioner's claims."[28]

## III.    Remaining Claims

Subsequent to this Court's Order drawing the case to a district judge, portions of Claim One remain unresolved.[29]  This Claim, and its applicable subparts,[30] is as follows:

> (1) [Applicant's] trial counsel rendered ineffective assistance, which caused [Applicant] to enter a guilty plea based upon counsel's misadvice and failure to investigate adequately, specifically:
>       . . .
>       (b) counsel failed to explain the penalties as to each separate count, but rather spoke in terms of "position of trust," "the lifetime sentencing act," and "pattern of abuse";
>       (c) counsel sent a letter to [Applicant] setting out the indeterminate sentencing consequences of counts one, two,

---

[26]Aycox v. Lytle, 196 F.3d 1174, 1177 (10th Cir. 1999).

[27]Id. at 1178.

[28]Id.

[29]Claims 1(a), 1(e), 1(f), 2, and 3 were previously dismissed as procedurally barred. Order (Doc. No. 14; Feb. 17, 2009).

[30]The Court will use the claim numbering scheme previously identified in the Feb. 17, 2009 Order.

three, and five, but failed to explain the sentencing consequences of count four;

     (d) counsel failed to object to an amendment of the information as to the date of the offense to which [Applicant] had agreed to plead. . . .[31]

In their Answer To Federal Habeas Application (Doc. No. 20; Mar. 23, 2009), Respondents argue that Claim 1(d) should be dismissed as procedurally defaulted.

Pursuant to 28 U.S.C. § 2254(b)(1), an application for a writ of habeas corpus may not be granted unless it appears that the applicant has exhausted state remedies or that no adequate state remedies are available or effective to protect the applicant's rights.[32] The exhaustion requirement is satisfied once the federal claim has been presented fairly to the state courts.[33] Fair presentation requires that the federal issue be presented properly "to the highest state court, either by direct review of the conviction or in a postconviction attack."[34]

Furthermore, the "substance of a federal habeas corpus claim" must have been presented to the state courts in order to satisfy the fair presentation requirement.[35] Although fair presentation does not require a habeas corpus petitioner to cite "book and

---

[31]Order (Doc. No. 14) at 3.

[32]*See* O'Sullivan v. Boerckel, 526 U.S. 838 (1999); Dever v. Kansas State Penitentiary, 36 F.3d 1531, 1534 (10th Cir. 1994).

[33]*See* Castille v. Peoples, 489 U.S. 346, 351 (1989).

[34]Dever, 36 F.3d at 1534.

[35]Picard v. Connor, 404 U.S. 270, 278 (1971); *see also* Nichols v. Sullivan, 867 F.2d 1250, 1252 (10th Cir. 1989).

verse on the federal constitution,"[36] "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts."[37] A claim must be presented as a federal constitutional claim in the state court proceedings in order to be exhausted.[38]

Finally, "[t]he exhaustion requirement is not one to be overlooked lightly."[39] A state prisoner bringing a federal habeas corpus action bears the burden of showing that he has exhausted all available state remedies.[40]

Respondents argue that Claim 1(d), alleging ineffective assistance of plea counsel for failure to object to the prosecution's amendment of the information, was never presented to the Colorado Court of Appeals. Specifically, although Applicant challenged the amendment as a substantive claim in the state court, he did not directly assert that counsel was ineffective for failing to object.

After reviewing the record, the Court agrees with Respondents. The Colorado Court of Appeals declined to address the issue of whether "trial counsel was ineffective for failing to adequately advise him about the impact of the amended date on his guilty pleas" since that contention was raised for the first time on appeal.[41] As such, Claim

---

[36]Picard, 404 U.S. at 278 (internal quotation marks omitted).

[37]Anderson v. Harless, 459 U.S. 4, 6 (1982) (per curiam).

[38]See Duncan v. Henry, 513 U.S. 364, 365-66 (1995) (per curiam).

[39]Hernandez v. Starbuck, 69 F.3d 1089, 1092 (10th Cir. 1995).

[40]See Miranda v. Cooper, 967 F.2d 392, 398 (10th Cir. 1992).

[41]Conkleton, No. 05CA1377, slip op. at 12 (citing DePineda v. Price, 915 P.2d 1278, 1280 (Colo. 1996) and People v. Goldman, 923 P.2d 374, 375 (Colo. App. 1996)). Additionally, Applicant's claim in his Application is that counsel failed to object to the amendment, rather than failed to advise. See Application at 5.2 ¶ 16. This claim was never argued in the state court.

1(d) is unexhausted.  Since no further state court remedy exists, because a second

Colo. R. Crim. P. 35(c) postconviction motion would be successive under Colo. R. Crim.

P. 35(c)(3)(VI) and (VII) and time-barred under Colo. Rev. Stat. § 16-5-402, further

attempts at exhaustion would be futile.  Therefore, for the same reasons that Claims

1(a), 1(e), 1(f), 2, and 3 were dismissed, Claim 1(d) is properly dismissed as

procedurally barred.


**IV.     Claims 1(b) and 1(c)**

Applicant's Claim One is based entirely on Strickland v. Washington's standard

for ineffective assistance of counsel.[42]  To prevail on this claim Applicant bears the

burden of proving both that 1) counsel failed to provide reasonably effective assistance

because particular acts or omissions of counsel fell outside the wide range of

reasonably competent assistance demanded of attorneys practicing criminal law; and 2)

the deficient performance prejudiced the defense.[43]  Pursuant to Hill v. Lockhart, this

test applies in the context of guilty pleas.[44]

Neither party disputes that the state court used the correct legal precedent and

that the facts here are distinct from the controlling Supreme Court case law.[45]  Applicant

instead argues that the state court's application of the Strickland/Hill standard was

---

[42]Strickland v. Washington, 466 U.S. 668 (1984).

[43]Id. at 694.

[44]Hill v. Lockhart, 474 U.S. 52, 58 (1985).

[45]See Williams, 529 U.S. at 405-06.

unreasonable. For ease of analysis, this Court will assume, as the Colorado Court of Appeals did, that plea counsel's assistance was deficient.[46] Therefore, analysis is solely whether plea counsel's performance prejudiced the defense.[47] In other words, "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."[48]

Claims of ineffective assistance of counsel raise mixed questions of law and fact and are reviewed under 28 U.S.C. § 2254(d)(1).[49] To establish prejudice, "a petitioner's 'mere allegation' that he would have insisted on trial but for his counsel's errors, although necessary, is ultimately insufficient to entitle him to relief."[50] Instead, a court must "look to the factual circumstances surrounding the plea to determine whether the petitioner would have proceeded to trial."[51]

---

[46]Conkleton, No. 05CA1377, slip op. at 7. A letter sent to Applicant before the plea hearing had incorrect advice regarding possible sentencing conditions, although testimony indicates that plea counsel corrected this misinformation during numerous other meetings and letters sent before the plea was entered.

[47]A trial court is not required to determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant because of the alleged deficiencies. Strickland, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Id.; *see also* Conkleton, No. 05CA1377, slip op. at 7 (*citing* People v. Fulton, 754 P.2d 398, 400 (Colo. App. 1987)).

[48]Hill, 474 U.S. at 59.

[49]Miller v. Champion, 262 F.3d 1066, 1071 (10th Cir. 2001).

[50]Id. at 1072 (*citing* United States v. Gordon, 4 F.3d 1567, 1571 (10th Cir. 1993)).

[51]Id. at 1072 (*citing* United States v. Wright, 43 F.3d 491, 498 (10th Cir. 1994) *and* Lasiter v. Thomas, 89 F.3d 699, 703-04 (10th Cir. 1996)). For example, strength of prosecution's case provides circumstantial evidence of petitioner's state of mind that he would not have gone tot trial absent counsel's deficient performance. Miller, 262 F.3d at 1072-74.

In Claim 1(b), Applicant maintains that his plea counsel failed to explain the penalties as to each separate count, but instead spoke in terms of "position of trust," "the lifetime sentencing act," and "pattern of abuse."  In Claim 1(c), Applicant maintains that his plea counsel sent a letter to him failing to describe the indeterminate sentencing consequences of at least one of the original counts he was facing.  Taken together, these claims assert that Applicant was inadequately advised about the terms of the plea agreement.

The findings made in state court support the conclusion that even absent plea counsel's deficient representation, Applicant would not have gone to trial notwithstanding his testimony to the contrary.  The Court agrees with and adopts the reasoning and findings in both the trial court and the Court of Appeals reasoning.  The Court will briefly highlight some of the most important elements contained in the record.

First, the state court found that the evidence against Applicant on all five counts was "exceedingly strong."[52]  This evidence included: eye witness testimony of the victim; hotel and concert receipts; a pretext telephone call recorded by police; the victim's ability to describe some unusual feature of Applicant's penis; and the victim's pregnancy and abortion.[53]  These findings provide strong circumstantial evidence that Applicant would not have risked trial for the unlikely outcome that the jury might have acquitted him on the counts punishable by a determinate sentence.

---

[52]Conkleton, No. 05CA1377, slip op. at 8; Application, Ex. C at 2.

[53]Application, Ex. C.

Next, the evidence indicates that Applicant understood that his chances of being found not guilty at trial were slim. Plea counsel "shared her analysis with Defendant that it was likely if the case went to trial, he would be convicted of all five counts, as there was no particular defense that would apply to some, but not all counts."[54] By the Applicant's own admission, he agreed with plea counsel's analysis of the strength of his defense:

> Q. You went over all the evidence with your attorney, Ms. Prudek, correct, all the police reports?
> A [Mr. Conkleton]. Yes, yes, we did.
> Q. And Ms. Prudek advised you of the potential outcome if you were to go to trial, correct?
> A. Yes, sir.
> Q. She advised you that you would likely be convicted on all counts, correct?
> A. Yes, sir.
> Q. You didn't like that option?
> A. Yes, I was concerned about that. No, I did not like that option.
> Q. And did you agree with Ms. Prudek's assessment based upon the pretext phone calls and the evidence that was presented against you that you would likely be found guilty of all charges?
> A. I felt that way, yes, sir.
> Q. And that's another reason why you accepted the disposition in this case?
> A. That's correct.[55]

Most important, there is clear evidence that Applicant's primary goal "was to minimize the chances that he would spend time in prison."[56] Plea counsel testified that

---

[54]Id. at 2.

[55]Transcript of Apr. 28, 2005 Hearing (Transcript), at 89:18-90:11.

[56]Id. at 30:10-17 (Applicant wrote in letter that whether he got "DOC time" was his "biggest concern"); Application, Ex. C at 2.

when she presented him with the evidence the prosecution had against him, he admitted his guilt.[57]  Moreover, Applicant did not want to go to trial primarily because he was innocent, but rather in hopes of obtaining a sentence for something short of a DOC incarceration.[58]  Plea counsel testified that the plea agreement reached was the best she could negotiate with the prosecuting attorney, and that the plea agreement appealed to Defendant because it allowed him eligibility for probation or for a community corrections sentence.[59]  Plea counsel also testified that she was "surprised" that Applicant was more concerned about the type of sentence rather than the potential incarceration terms.[60]

Again, Applicant's own statements verify plea counsel's recollection:

> Q. And your position was, you didn't want to go to prison, correct?
> A. I was concerned about going to prison, yes.
> Q. You wanted probation versus prison, right?
> A. Yes, sir.
> Q. And you didn't want to go to prison for 10 to 32 years on a determinate sentence, correct?
> A, I think I just didn't want to go to prison for any length of time.
> . . .
> Q. And you wanted an option that gave you the opportunity to apply for probation, correct?
> A. Yes, sir, I thought I was eligible.

---

[57]Transcript at 23:16-17.

[58]*See, e.g.*, Id. at 23:17-21.

[59]Application, Ex. C at 2-3.

[60]"[I]t was not the lifetime provisions that bothered him, which kind of surprised me. It was, was he going to go to prison versus, you know, how much likelihood, you know, 'What's my chances of getting probation?' He was not concerned about that. The lifetime provisions were not really his concern at that time, which kind of surprised me." Transcript at 33:19-24.

Q. And you were given that option by this plea agreement, correct?

A. That's correct.

Q. And that's the reason why you chose to accept this plea agreement, right?

A. Yes.

Q. Was to avoid the potential sentence to the Department of Corrections, right?

A. Well, I mean, I still knew that it was a potential to go to prison. So, I mean, I think the main reason I accepted the plea agreement is because I understood that the other charges would be dropped, and there wouldn't be any others added, but, you know, yeah, I also knew there was a chance I could get probation or ComCor too.[61]

Applicant has not shown the state court unreasonably applied the Strickland/Hill standard in this case.  Therefore, Claims 1(b) and 1(c) are denied.

## V.    Order

Accordingly, it is

ORDERED that Claim 1(d) is dismissed as procedurally barred.  It is

FURTHER ORDERED that Claims 1(b) and 1(c) are denied.  It is

FURTHER ORDERED that Applicant's Application For A Writ Of Habeas Corpus

Pursuant to 28 U.S.C. § 2254 (Doc. No. 1; Sep. 29, 2008) is denied.  It is

---

[61]Transcript at 88:15-23, 89:1-17.

FURTHER ORDERED that a certificate of appealability shall not issue because

Applicant has not made a substantial showing of the denial of a constitutional right.[62]

DATED at Denver, Colorado, this 19th day of May, 2010.

BY THE COURT:

_Zita Leeson Weinshienk_

_____

ZITA LEESON WEINSHIENK, Senior Judge
United States District Court

---

[62] 28 U.S.C. § 2253(c)(2); Fed. R. Governing Section 2254 Cases 11(a).